## Girard Life Ins. Co., Adm'r of Edward Magarge, *versus* Mutual Life Ins. Co. of New York.

1. Where it is the general practice of mutual life insurance companies to receive overdue premiums, if a premium is tendered within a reasonable time after it has become due and while the insured is in his usual health, the policy will not be forfeited.

2. Where the company has declared a policy forfeited, and refused to receive a premium, the fact that the insured subsequently failed to pay premiums, as they fell due, will not affect the right to recover on the policy.

February 8th 1878. Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON and TRUNKEY, JJ. WOODWARD, J., absent.

Error to the Court of Common Pleas, No. 3, of *Philadelphia county*: Of January Term 1876, No. 116.

Case by the Girard Life Insurance and Trust Company, administrators of Edward Magarge, deceased, against the Mutual Life Insurance Company of New York. Magarge insured his life in the defendant company on April 14th 1863, for $10,000, and agreed to pay the quarterly premium of $51, upon the 14th days of January, April, July and October of each year. The following were among the provisions of the policy :—

"If the said premiums shall not be paid on or before the days above mentioned for the payment thereof, at the office of the company, * * * then in every such case the said company shall not be liable for the payment of the sum assured, or any part thereof, and this policy shall cease and determine.

"It is also agreed that in every case when this policy shall cease and determine, or become or be null and void, all payment thereon shall be forfeited to this company."

Magarge paid all the premiums up to and inclusive of the 14th of October 1870. The premium falling due on the 14th of January 1871, he neglected to pay until the 16th, when the company refused to accept it, and declared the policy forfeited. The defendant is a mutual company, and on the 1st of January 1871, as was their custom, had declared a dividend upon policies then in force

out of the surplus of the preceding year.   At the time of the forfeiture of Magarge's policy this dividend was not apportioned, but it was afterwards ascertained to be $67.70.   It was usual to apportion these dividends about the middle of February.   On the day of the forfeiture Magarge was in his accustomed health.   He died in February 1872.   No tender was ever made of the premiums accruing from the 14th of January 1871 to the day of his death. At the trial, before Lynd, J.; it was shown that the company were in the habit of sending notices to the insured of the accruing premiums, but no notice was sent of the premium of January 14th 1871.   It also appeared that on two previous occasions Magarge had failed to pay the premium on the day it fell due, and that when tendered by his clerk, Rees, two or three days subsequently, after an inquiry if Magarge was in his usual health, was accepted.   The plaintiffs also offered evidence to show that it was the general practice among life insurance companies to receive premiums which were a short time overdue, even to thirty days; that this practice obtained if the insured was in his usual health, and there was no good reason to forbid, and that the practice was not considered as an act of grace or privilege to the insured, but for the interest of the company.   Upon the foregoing facts the court, on motion, granted a nonsuit, which the court in banc subsequently refused to take off. This action was assigned for error.

*John J. Ridgway, Jr.*, and *Daniel Dougherty*, for plaintiffs in error.—If it was the custom to send notices, the insured had the right to expect the continued observance of the custom : Mayers v. Ins. Co., 4 Big. Ins. Rep. 62; Helme v. Ins. Co., 11 P. F. Smith 107.   After the tender of the premium, on the 16th day of January 1871, and the refusal to accept, no subsequent tender was necessary : Bird v. Ins. Co., 2 W. N. C. 410.   It would be inequitable to permit a forfeiture, when the defendant company had in its hands funds belonging to the insured more than sufficient to pay the premium, simply because he did not give them notice to so apply them.   The ordinary rule of appropriation should govern, that when neither party has made an appropriation, the law will make it according to the equity and justice of the case, and most beneficially to the parties : Insurance Co. v. Grigsby, 2 Court L. J. (Ky.) 123; Story's Eq. Jur. 479, 481; United States v. Kirkpatrick, 9 Wheat. 720; United States v. Wardwell, 5 Mason 82; Postmaster-General v. Furber, 4 Id. 333; Gass v. Stinson, 3 Sumner 99; United States v. January, 7 Cranch 572; Harker v. Conrad, 12 S. & R. 301; 1 Am. Lead Cas. 123; Am. Law Mag. (Phila.), April 1843, pp. 31, 33.

*Henry J. McCarthy* and *William A. Porter*, for defendant in error.—Prompt payment of the premium is of the substance of an

insurance contract: Robert *v.* New England Mut. Life Ins. Co., Disney's Rep. 355; 1 Bigelow's Life and Accident Ins. Rep. 634; Mut. Benefit Life Ins. Co. *v.* French, 2 Cincinnati Sup. Court Rep. 321; 4 Bigelow's L. & A. Ins. Rep. 369.

Where a policy is forfeited, it can only be revived or renewed by an express agreement of the insurers: Diehl *v.* Adams County Mut. Ins. Co., 8 P. F. Smith 452; Carroll *v.* Charter Oak Ins. Co., 38 Barb. 402; Robert *v.* Ins. Co., *supra.* Agents of the company have no authority to waive forfeiture: Mentz *v.* Lancaster Fire Ins. Co., 29 P. F. Smith 475; Bouton *v.* Am. Mut. Life Ins. Co. 25 Conn. 542; Busby *v.* North Am. Life Ins. Co., 4 Bigelow's L. & A. Rep. 116; Catoir *v.* The Am. Life Ins. & Trust Co., 4 Vroom 487; 1 Bigelow's L. & A. Rep. 336; Koelges *v.* Guardian Life Ins. Co., Id. 621; 2 Lansing 480; Williams *v.* Washington Life Ins. Co., 4 Bigelow's L. & A. Ins. Rep. 56; Roehner *v.* Knickerbocker Life Ins. Co., 4 Daley 512.

Where a policy of insurance contains an agreement for the continuance of the policy in force until the decease of the person whose life is insured, provided that the assured shall duly pay or cause to be paid annually, on or before a specified day in each year, a certain premium, payment upon the day specified is a condition precedent, and, unless performed, the policy is no longer in force.

Mr. Justice TRUNKEY delivered the opinion of the court, February 25th 1878.

The only assignment considered well founded is the seventh, which charges error in entering nonsuit. It has not been alleged that the plaintiff's case was defective in proof on any point other than evidence to relieve from the effect of non-payment of premiums. In determining the rightfulness of a nonsuit, for want of sufficient evidence of the claim, all that was received must be taken as true, and every inference of fact, which the jury might draw from it, in favor of the plaintiff, as admitted: Smyth *v.* Craig, 3 W. & S. 18.

The defendants were a foreign insurance company, doing business in Pennsylvania, under her laws relative to such companies. Their licensed agent, by provision of the statute, has full power and authority to transact their business, either in person or by any subordinate agent or agents appointed by him. His office was in Philadelphia, and his dealings with the assured, within the scope of his authority and the customs of that place relating to life insurance, affect and bind the company as if their principal office were in that city.

The policy is dated April 14th 1863, and contains a condition that if the premium of $51 shall not be paid on the 14th days of April, July, October and January of each year, the company shall not be liable to pay any part of the sum assured, the policy shall

be void, and all payments thereon shall be forfeited to the company. Every premium was paid up to and including the one due October 14th 1870. The agent usually sent notices to Magarge of the time payments would be due, and stated therein that they were sent only as a courtesy. Rees usually paid the premiums for Magarge, and on January 16th 1871, at the office of the agent, tendered the money for the premium which had become due on the 14th of that month. The money was refused, and answer made that the policy was forfeited for non-payment of premium. Before that, on October 16th 1867, and April 16th 1870, he had paid overdue premiums to the agent, who, on an affirmative answer to his inquiry if Magarge was well, took the money and handed over the receipts. Magarge was in his usual health in January 1871.

The memorandum furnished by the company shows that the dividend due to Magarge for each of the four years preceding 1870 was ascertained in February of such year, and for 1870 in January. It also shows that the first payment of premium out of dividend was in 1868 ; that no dividend was used in such payment in October 1867, nor in April 1870 ; that the dividends due Magarge on October 16th 1867 amounted to $226.66, and on April 16th 1870 to $92.81. From Lambert's testimony, the general dividends were declared at the end of each year, but the sum due to each policy could not be ascertained till several weeks thereafter. It is manifest that if the company did not know the exact sum due on January 14th 1871, as dividend, they knew it exceeded the premium due at that date.

Upon the verity of the testimony of Mr. Ashbrook, the jury would have been warranted in finding that it " is a custom among life insurance companies to receive premiums, if tendered at any time within thirty days of the time they fall due, provided the insured is in usual health, and that this custom includes policies stipulating for forfeiture in case of non-payment of premium on the day."

In Helme v. Philadelphia Life Ins. Co., 11 P. F. Smith 107, it was ruled that such a custom curtails the generality of the clause, and shows that forfeiture was not demandable at the day, nor at all, if paid within the thirty days. The extension of time by the custom was likened to days of grace on commercial paper, and to the right of a tenant, after the term named in his lease, to harvest and take his share of the way-going crop.

No vestige of reason is discoverable for refusing the premium tendered the second day after it became due. The company had twice before taken it under precisely similar circumstances, and in entire accord with the general practice. The second was just nine months before the declaration of forfeiture. If the notices were courtesies with forfeit-warning prods, other acts of the company were opiates. If it be said that when the overdue premiums were

[Girard Life Ins. Co. *v.* Mutual Life Ins. Co.]

received, dividends to greater amount were due the assured, so they were at the date of refusal. In the midst of a general usage, to receive premiums after the stipulated day, when the assured was in usual health, the company, if intending to enforce forfeiture, should not deal with the assured as if recognising the general practice, nor give him a notice with one hand and lull him to sleep with the other.

It was urged on behalf of defendants that payment of the premiums due on January 14th 1871, was a condition precedent, and, also, payment of the premiums after that date falling due before his death in February 1872, and that equity will not relieve against losses resulting from non-performance of such condition through neglect alone of the sufferer. Be it so; the non-performance was because of defendants' refusal to take the premium when tendered. They declared the policy forfeited on January 16th 1871, and from that date persisted in treating it as a nullity. On another policy they had given to Magarge, they gave notices, as was their custom, of the falling due of premiums, but none in reference to this. They still say it became void, and that no life was left in it. The assured lost nothing by omitting the farcical act of a formal tender every quarter, while the company insisted the policy was dead. It was not his neglect but their fault that the premiums were unpaid.

When their evidence is heard the case may present a different aspect.        Judgment reversed and procedendo awarded.

PAXSON, J., dissents.