## Durso v. The Philadelphia Musical Society, Local No. 77

*Edmund Pennell Hannum*, for plaintiff.

*George T. Guarnieri*, for defendant.

CARROLL, P. J., November 20, 1957.—The issue before us in this matter is plaintiff's standing in equity to compel defendant Local No. 77 to nullify certain disciplinary action taken against him and to restore him to full membership in the union.

Procedurally, the matter is here on the preliminary objections of the local to plaintiff's amended complaint

in equity. The original complaint was filed on March 20, 1957, and objections to this complaint were sustained with leave to plaintiff to amend within 30 days. Thereafter plaintiff filed an amended complaint which again was met by defendant's objections. It was our review of these amended pleadings together with certain exhibits, including the constitutions and bylaws of the Philadelphia Musical Society, Local No. 77, and of the American Federation of Musicians, which led us to sustain the objections and dismiss the complaint.

We did so because the complaint reveals plaintiff has no right to equitable relief because he has failed to exhaust the internal remedies provided by the union constitution and has failed to aver any facts which would justify this court in finding that the internal remedies are illusory or that those who would sit in judgment are so biased as to deny plaintiff a fair hearing.

The amended complaint sets forth that plaintiff was a member in good standing of Local No. 77, a Philadelphia union affiliated with the American Federation of Musicians. He alleges that on or about August 8, 1956, the executive board of the local issued a summons to him to appear for interrogation at a meeting called for August 15, 1956. Plaintiff attended this meeting and the board demanded that he produce a certain letter, which he refused to produce at the time but which he has in fact appended as part of the record. He avers that he objected to producing this letter because it would prejudice him with other musicians and prevent him from securing employment. Because of his refusal to produce the letter, he was summoned on September 20, 1956, to appear before the trial board which was scheduled to meet on the following Wednesday, September 26, 1956, at the union hall. Plaintiff avers that he attended the meeting of the trial board and testified that he could not comply with

the order of the executive board because he was unable to locate the letter. On September 27, a notice was sent to plaintiff stating that the trial board had found him guilty of violating section 35 of article XX of the local's bylaws. This section provides:

"It shall be the duty of every member to conduct himself in conformity with the Constitution and By-Laws; and to comply with every order, direction or notification, oral or otherwise, properly issued by the Local through its duly constituted officers. Where no penalty for the particular violation is provided, the offense shall be punishable by a fine of not more than $500., or suspension, or both, or expulsion."

The trial board ordered plantiff to pay a fine in the amount of $250 for his refusal to produce the letter. The order sets forth that $50 was to be paid immediately and $200 within the ensuing 30 days. The order states in part: ". . . which amount will be rescinded upon Durso's producing on or before October 26, 1956, the letter sent to him by Dee Porter. In the event the letter is not submitted to Local 77 on or before October 26, 1956, Edward Durso is required to pay the full amount of $250.00."

The notice, which is on a printed form, directed plaintiff's attention to the fact that the decision of the trial board is final except as provided under article VIII, secs. 14 and 15, of the bylaws. The notice also states that any member may appeal to the national executive board and the convention of the A. F. of L., pursuant to the bylaws of the federation.

On September 28, 1956, October 4, 1956, and October 10, 1956, plaintiff applied for a rehearing before the trial board in accordance with article IX, sec. 9, of the bylaws of Local 77, which provides in essence that a rehearing may be granted if new evidence is presented which an accused could not produce at the original trial. Plaintiff was notified on October 25,

1956, that the board had denied a rehearing. On November 25, 1956, plaintiff appealed to James C. Petrillo, international president of the parent union of which the local is an affiliate, for a stay of judgment in accordance with section 2 of article 8 of the bylaws of the international, which provides in essence that the president may, in his discretion, hold any fine in abeyance until the accused has appealed the case before the international executive board.

On November 9, 1956, this application was denied.

Plaintiff avers that he was unable to comply with the requirement that he deposit $250 and therefore was unable to pursue the appellate procedure set forth in the union bylaws. He then makes the following allegations in the complaint, the principal averments upon which he bases his right to equitable relief:

"15. The plaintiff, being unable to comply with the requirement that he deposit said amount of $250.00, was by the provisions of said By-law and the denial of stay of judgment prevented from pursuing the remedy of appeal provided.

"16. The plaintiff avers that an appeal to the International Exectuive Board would not have provided him with a remedy but that said Board would have affirmed the action of the Local Trial Board without a full and impartial consideration."

Local No. 77 did in its monthly journal for December, 1956, publish notice that plaintiff's membership was terminated. Plantiff avers this resulted in his loss of status as a union musician, which is tantamount to depriving him of his livelihood. He avers that the action of the executive board was unreasonable and consituted a violation of his right of privacy since the initial letter did not pertain to the affairs of Local 77. He also alleges that the action of the trial board was capricious and arbitrary and that its refusal to grant him a rehearing was also unreasonable. He states that

he has exhausted all remedies prescribed in the bylaws and avers that the bylaws fail to provide an appropriate remedy whereby he can secure relief.

Defendant Local No. 77's preliminary objections, though somewhat lengthy, in essence set forth that plaintiff has failed to state satisfactorily the manner in which the orders of the executive board and trial board were arbitrary and capricious and has also failed to set forth that he has exhausted internal remedies which were open to him.

In entering judgment for defendants, we were mindful of the principles which govern summary judgment and only did so because as a matter of law plaintiff was not entitled to relief. See London v. Kingsley, 368 Pa. 109 (1951) ; Gaul v. Philadelphia, 384 Pa. 494 (1956).

It is quite clear under the law of Pennsylvania that a court of equity will not intervene unless the remedies provided by the constitution and bylaws of the organization have been exhausted. See Trainer v. International Alliance, 353 Pa. 487, 491 (1956) ; O'Neill v. United Plumbers, Inc., 348 Pa. 531 (1944) ; Maloney v. United Mine Workers of America, 308 Pa. 251 (1932).

The only exceptions to this rule are: (1) If the exhaustion of internal remedies would be futile and illusory (Blenko v. Schmeltz, 362 Pa. 365 (1949)) ; (2) if this would under the circumstances in effect be a denial of justice (Heasley v. Operative P. & C. F. L. Association, 324 Pa. 257 (1936)) ; Gill v. Ladies Catholic Benevolent Association, 36 Pa. Superior Ct. 458 (1908) ) ; or (3) if the action taken by the organization violates due process: O'Neill v. United Plumbers, supra. If any of these conditions exist, exhaustion of internal remedies is not a condition precedent to judicial relief. Such, however, is not the case before us. Plaintiff's own complaint and exhibits indicate that

far from denying due process, the union constitution and bylaws afford an opportunity for a fair hearing to an aggrieved party.

Plaintiff puts much reliance upon the trial board's refusal to grant a rehearing under article IX, sec. 9. This provision reads as follows:

"It shall grant a rehearing to any member who has been fined, penalized or had judgment rendered against him by the trial board, providing the said member makes written application for the rehearing, showing therein that he has new evidence, which he was unable, for good reasons, to present at his trial, and which evidence, in the opinion of the Board, is material."

It is clear under this article that the rehearing is not mandatory but discretionary and that the board will act only after it is convinced that the aggrieved party has new evidence which is material. Moreover, section 2 of article 8 of the bylaws of the international union provides that it is up to the international president to decide whether or not a stay should be granted. That provision reads as follows:

"If the event of an appeal to the International Executive Board or to a Convention the appellant may request a stay of judgment from the International President, who shall decide whether or not the appellant is entitled to same. If the request for stay of judgment is denied, then the appellant must deposit the amount of any fine placed, or any claim allowed, or in lieu thereof a satisfactory bond with the Local, if the appeal is concerning a violation of a Local law by a Local member, or with the International Treasurer if the appeal is concerning a violation of, or goverened by Federation laws. If the appeal is upheld, then the deposit shall be returned to the appellant."

If the request is denied, then appellant must deposit the amount of any fine placed or any claim al-

lowed, or, in lieu therof, a satisfactory bond with the local if the appeal concerns a violation of a local law by a local member. If the appeal is upheld, then the deposit is returned to appellant.

Section 1 of article 8 of the international bylaws provides that the appeal can be made to the international executive board from any decision of whatever kind by a local or any other authority. The rest of that article details the procedure which must be followed. Plaintiff argues that the trial board in the first instance had no right to suspend him because the matter was an invasion of his right of privacy. Plaintiff's contention may be correct but until he has exhausted his internal remedies, this court can not and should not intervene. It would seem that the action of the trial board was not unreasonable. Only $50 of the fine was to be paid immediately. Plaintiff was given 30 days within which to raise the additional $200. Compliance with the order would have resulted in a return of that amount. The trial board in its discretion refused a new hearing. The international president refused a stay. The requirement that plaintiff put up this amount or some security or a bond in the amount of $250 is certainly not one which is so onerous under the circumstances of this case that is can be called a practical denial of justice. A mere averment that a remedy is futile or illusory can not result in plaintiff lifting himself by his own boot straps. See Raevsky v. Upholsterers' International Union, 38 D. & C. 187 (1940).

Thus in the case of Binkowski v. Highway Truck Drivers and Helpers, Local 107, 8 D. & C. 2d 254 (1957), 389 Pa. 116 (1957), the Supreme Court held that so long as an effective remedy avails itself to plaintiff, the court has no jurisdiction to try the case. See also McGovern v. Brotherhood of Railway & Steamship Clerks, C. P. 2, September term, 1958, no.

3908. Were a plaintiff permitted to circumvent this rule merely by pleading that a remedy is illusory or that justice will be denied, then the rule would become a nullity. It is not the averment of the conclusion which will distinguish the case from those in which our Supreme Court has held that internal remedies must be pursued. It is only when the constitution and bylaws themselves are so defective as to deny due process or when the procedure permits those who impose the punishment to sit in review as well that the court will intervene.

In the instant case it is clear that plaintiff can not aver that the international executive board would be so biased or prejudiced as to deny him a fair hearing. Moreover, there is no averment that there would be long delay or other hardships. The provision that the amount of the fine be deposited or a bond in lieu thereof be lodged with the local is not an unreasonable one under the circumstances of this case. Admittedly, plaintiff may be unable to pay the sum of $250. Yet it certainly would seem reasonable for the international to insist that some security be deposited.

In holding as we do we are not saying that the grounds for dismissal might not be so far removed from his duties as to be a violation of his fundamental rights. What we are saying, however, is that the internal remedies provided by the union bylaws permit him a complete review and that the condition precedent, viz., the deposit of security, is not so onerous in this case as to be a practical denial of justice. For a court of equity to intervene before the executive board of the international union has had an opportunity to review the situation would be tantamount to a decision by this court that plaintiff would not and could not have a fair hearing. Nothing in the pleadings or the record would justify such a conclusion. Plaintiff claims that he is unable to pursue his profession. The

answer to this allegation is that his refusal to comply with the union procedures has placed him in that position. Even if he could not deposit the amount of the money, he surely would be able to get some security or bond for a nominal sum which would then permit him to have full union privileges while his appeal was pending.

It is for these reasons that we sustained the objections and held that the matter at this stage of the proceedings would not warrant judicial intervention.